UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RAMEL THEODORE TROY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-275-CCB-AZ |
| J. GALIPEAU, et al., | |
| Defendants. | |

## **OPINION AND ORDER**

Ramel Theodore Troy, a prisoner without a lawyer, filed a second amended complaint against twenty-one defendants alleging his Eighth Amendment rights were violated when he was denied adequate medical treatment, meals, showers, and outside recreation. ECF 28. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

### **September 2022**

Troy's allegations pertain to his confinement at Westville Control Unit ("WCU"). He initially asserts his Eighth Amendment rights were violated when he was denied breakfast, lunch, and dinner meals, and water from September 1, 2022 to September 23,

2022. ECF 28 at 35-36. Troy contends that Officer Baily, who was responsible for providing him with breakfast meals during this three-week period, never offered him a meal. *Id.* at 35. Officer Bell, who was also responsible for delivering breakfast meals during this period, refused to stop at Troy's cell to offer him a meal. *Id.* at 36. He further asserts that Officer Motsagen refused to provide him with lunch and dinner meals and Officer Brandon Williams denied him access to water in his cell, all during this same period of time. *Id.*

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided

2

> not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotations marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (when inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference."). Giving Troy the inferences to which he is entitled at this stage of the proceedings he has plausibly alleged Eighth Amendment claims against Officers Baily and Bell for refusing to provide him with breakfast meals from September 1, 2022 to September 23, 2022. He has also plausibly stated an Eighth Amendment claim against Officer Motsagen for refusing to provide him lunch and dinner meals during this same period. Furthermore, Troy has plausibly stated an Eighth Amendment claim against Officer Williams for denying him access to water in his cell during this same period.

Troy next alleges that, on September 23, 2022, an officer found him in his cell in a sitting position. ECF 28 at 15. The officer brought Troy some ice cubes and then took him to the prison's infirmary in a wheelchair. *Id*. A physical examination indicated Troy was dehydrated and lab results showed he had acute renal failure. *Id*. Dr. Jackson, a prison doctor, diagnosed Troy's condition as being stable, ordered that he remain in the prison's infirmary, and prescribed a liquid diet. *Id*. He noted Troy had undertaken an "undeclared hunger strike." *Id*. at 1-2 at 7. Troy told Nurse Sandra Allen, Nurse Dorothy Livers, and Nurse Nicole Bridegroom he had not eaten a meal in three weeks.

3

*Id*. He also told Nurse Allen there had been no running water in his sink in his cell for three weeks. *Id*. at 16.

Troy contends that while he was in the prison's infirmary, Sgt. Escobedo and another officer held his neck and head, and forced liquids down his throat without his consent or knowledge of what he was consuming. ECF 28 at 18. "Prison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death." *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011) (citing *Freeman v. Berge*, 441 F.3d 543, 546-47 (7th Cir. 2006)). Because Troy's physical condition had deteriorated to the point where he was dehydrated and experiencing acute renal failure, it was reasonable for Sgt. Escobedo and the other officer to force Troy to consume liquids. Because an inmate conducting a hunger strike does not have a constitutionally protected right to refuse life-saving medical treatment, Troy may not proceed against Sgt. Escobedo. *Freeman*, 441 F.3d at 546-47.

Troy asserts he remained in the prison's infirmary until September 25, 2022, where he was in extreme pain, unable to breathe, could not voice his concerns, and had limited mobility. *Id*. at 18. He states he was rushed to Franciscan Hospital in Michigan City, Indiana, after inmates contacted his sister, who in turn contacted WCU. *Id*. Troy contends that Dr. Jackson and Nurse Allen were deliberately indifferent to his life threatening condition because they did not immediately transport him to the hospital and, instead, treated him in the prison's infirmary. *Id*. at 16.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is viewed as "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Prisoners are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[T]he Eighth Amendment does not require that prisoners receive unqualified access to health care." (citation and quotation marks omitted)). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Because there is no one right way to practice medicine in the prison setting, courts must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under

those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "Mere negligence will not suffice, and deliberate indifference is not coextensive with medical malpractice." *Jackson v. Esser*, 105 F.4th 948, 961 (7th Cir. 2024). Troy has not plausibly alleged that either Dr. Jackson or Nurse Allen were deliberately indifferent to his medical needs because he was housed in the prison's infirmary for three days where they treated him, and Dr. Jackson diagnosed his condition as stable and prescribed a liquid diet. Therefore, he may not proceed on Eighth Amendment claims against these two defendants.

When Troy arrived at Franciscan Hospital on September 25, 2022, he was diagnosed with having a fever, possible sepsis, acute renal failure, and fluid in his lungs and heart. ECF 28 at 18. The following day, Dr. Niraj Bhalakia, with the assistance of Radiology Practitioner Assistant ("RPA") Cathy Weber, performed a thoracentesis procedure to remove fluid from the area between his lungs and chest wall. *Id.* at 23. After the procedure, Troy asserts he was treated for a blood infection because RPA Weber's medical instruments were unsanitary. *Id.*

On September 28, 2022, Dr. Kamal Sadat performed a pericardiocentesis procedure to drain fluid from the sac surrounding his heart. *Id.* at 19-20. Dr. Sadat punctured the right ventricle of his heart which led to a deconditioning diagnosis, right kidney injury, and shortness of breath. *Id.* at 20. Troy was then required to undergo an immediate cardioversion procedure. *Id.* He alleges Nurse Kari Rodeborst facilitated the

6

pericardiocentesis procedure by having him sign an "unauthorized" consent form to have anesthesia and undergo the procedure. *Id*. at 19. Troy asserts Nurse Thomas Swedenberg also falsified the medical log to show he consented to the procedure. *Id*. at 13.

To the extent Troy has sued Dr. Bhalakia, RPA Weber, Dr. Sadat, Nurse Rodeborst, and Nurse Swedenberg, who are employed by Franciscan Hospital, he may not proceed against them. "In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). While the conduct of private actors can transform them into state actors for § 1983 purposes, the facts must permit an inference that the defendants' actions are "fairly attributable to the state." *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Troy has not alleged facts from which it can plausibly be inferred that these five defendants could be fairly deemed to be state actors. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) (summarizing situations where private actors can become state actors). Therefore, he may not proceed against these defendants.[1]

Additionally, Troy has named Franciscan Alliance, the corporate entity or company that owns Franciscan Hospital. ECF 28 at 22. There is no general *respondeat*

---

[1] To the extent Troy intended to sue these defendants for malpractice, he cannot proceed because he did not first present his proposed complaint to the medical review panel and receive an opinion from the panel. *See* I.C. § 34-18-8-4; *Terry v. Community Health Network*, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014); *Hines v. Elkhart Gen. Hosp.*, 603 F.2d 646, 647 (7th Cir. 1979).

7

*superior* liability under 42 U.S.C. § 1983, and this corporate entity cannot be held liable for a constitutional violation solely because it employs medical staff at Franciscan Hospital. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can be sued for constitutional violations under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), but it "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). Here, Troy does not allege that Franciscan Alliance has an unconstitutional policy or custom that caused his injury. Therefore, he may not proceed against Franciscan Alliance.

### October 2022

In October 2022, after his release from Franciscan Hospital, Troy was once again housed in the prison's infirmary. ECF 28 at 16. He asserts that Officer Williams unexpectedly came to the infirmary and assaulted him. *Id*. However, Troy's allegations are vague as he has not described any of the circumstances or details surrounding the alleged assault. Therefore, he has not plausibly alleged an Eighth Amendment excessive force claim against Officer Williams.

Troy also alleges that Nurse Livers asked Mental Health Counselor Michelle Boren to speak with him in October because "they heard [he] had been through a lot." ECF 28 at 34. Here, Troy explains that when he first arrived at WCU, he was taking medication and attending monthly mental health sessions to treat his depression and anxiety, which caused him to twice attempt suicide. *Id*. at 35. Despite his condition,

8

Counselor Boren discontinued his mental health medication and services. *Id*. Troy later asked Counselor Boren to resume his mental health treatment, but she only offered him a handbook. *Id.* He submitted healthcare requests asking for mental health services, but was not given treatment, and his condition declined. *Id*. Giving Troy the inferences to which he is entitled at this stage of the proceedings, he has plausibly alleged Counselor Boren was deliberately indifferent to his mental health needs when she denied him mental health treatment in October 2022.

## November 2022 to March 2023

On November 13, 2022, while Troy was still housed in the infirmary, he asserts Officers Motsagen and Williams, along with another officer, hog tied him using shackles and handcuffs and carried him out of the prison's infirmary. ECF 28 at 17. They took him outside to a state van where he alleges Officer Williams climbed into the back seat of the van and assaulted him for two minutes using his fists. *Id*. Troy requested medical assistance following the assault, but Nurse Allen denied his requests and told him that "medical will see you when you heal up." *Id*. Giving Troy the inferences to which he is entitled at this stage of the proceedings, he has plausibly alleged an Eighth Amendment excessive force claim against Officer Motsagen for hog tying him with shackles and handcuffs, and placing him in a state van on November 13, 2022. He has also plausibly alleged an Eighth Amendment excessive force claim against Officer Williams for hog tying him with shackles and handcuffs, and placing him in a state van where he assaulted him on November 13, 2022. Furthermore, he has plausibly

9

alleged that Nurse Allen was deliberately indifferent to his requests for medical treatment following the November 13, 2022, assault.

Troy next asserts that Officer Williams was required to report the November 13, 2022, incident. ECF 28 at 17. He states that Officer Williams did not document the incident, even though Indiana Department of Correction ("IDOC") policy mandates that he do so. *Id*. Section 1983 allows a plaintiff to sue for a violation of his federal rights, not of IDOC policies. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (claim under § 1983 requires that plaintiff was deprived of a federal right by a person acting under color of state law). A violation of IDOC policy alone cannot form the basis for a constitutional claim. *See Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws"). Therefore, Troy may not proceed against Officer Williams on his allegations that IDOC policy was violated.

In November 2022, after Troy had returned to his cell, Captain Gary Lewis and Unit Team Manager Tracy Cornett reported to Nurse Livers, Nurse Bridegroom, and Dr. Jackson, that Troy was declining in health because he was "urinating and pooping on himself" and "unable to take care of himself." ECF 28 at 24. Troy submitted medical requests because his physical and mental health declined as he was forced to live, eat, and sleep in a cell where his sheets and blankets were soiled with urine and feces. *Id*. at 24-25. Given the situation, Officer Motsagen reported to Captain Lewis on several

occasions that Troy needed assistance. *Id*. at 25. Troy contends that from November 13, 2022 to September 2023, there were 85 instances where he verbally reported needing assistance to clean himself and his cell. *Id*. at 24-27. He asserts Captain Lewis was aware of his situation, but denied him basic supplies he needed to clean his cell. *Id*. Troy has plausibly alleged an Eighth Amendment claim against Captain Lewis for housing him in an unsanitary cell contaminated with urine and feces from November 13, 2022 to September 2023.

Troy next argues he was denied showers beginning in mid-November 2022. ECF 28 at 28-30, 35-36. Here, Troy alleges Officers Motsagen, Pleasant, and Williams, and Nurse Allen denied him 71 showers during approximately eight months, but he does not address how many showers he was permitted to take. The importance of the daily shower to the average American is cultural rather than hygienic . . .." *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988). Troy was not entitled to daily showers, and he has not pled facts from which it can be plausibly inferred that his basic hygiene needs were not met during this period of time. *See id*. and *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (weekly showers are not a constitutional violation). Without more details about his circumstances, these allegations are insufficient to state a claim.

Troy also alleges he was denied outdoor recreation starting in mid-November 2022. ECF 28-30, 35-36. He contends Officers Motsagen, Pleasant, and Williams, and Nurse Allen denied his 71 requests for outdoor recreation. ECF 28 at 28-30, 35-36. Troy states he was only able to perform limited exercises in his cell, such as push-ups,

11

because he was housed in an eighty square foot cell. *Id*. at 32. He was also limited to one hour of exercise out of his cell each day in an outdoor exercise area where he asserts there was no space provided for inmates with limited mobility issues. *Id*.

Here, Troy has not alleged he was deprived of all physical activity. Though a total lack of exercise would state a claim "[w]here movement is denied and muscles are allowed to atrophy," *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), the denial of "desirable, entertaining diversions . . . [do] not raise a constitutional issue," *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988).

> Recreation and the ability to obtain physical exercise have been properly recognized as important human needs. See, *e.g., Davenport v. DeRobertis,* 844 F.2d 1310, 1315–16 (7th Cir.1988). However, there is no constitutional right to a specific form of recreation. Rather, only the objective harm that *can* result from a significant deprivation of movement implicates the Eighth Amendment. *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985) (the Eighth Amendment is implicated where a denial of exercise causes the muscles to atrophy and threatens the health of the individual).

*Douglas v. DeBruyn*, 936 F. Supp. 572, 578 (S.D. Ind. 1996); *Smith v. Erickson*, 684 Fed. Appx. 576, 578–79 (7th Cir. 2017) (collecting cases and recognizing the distinction between the denial of "recreation," which did not state a plausible constitutional violation, versus the denial of exercise in its entirety, which could). Because Troy alleges he had the ability to exercise in his cell and had one hour of exercise outside of his cell each day, he has not plausibly alleged Eighth Amendment claims against these four defendants.

Next, Troy asserts that Aramark Manager Mooney initially began to put his health at risk in November 2022, when her workers prepared meal trays that were left

12

in a hallway at WCU for seven hours when the meals had a four-hour expiration. ECF 28 at 34. He also explains that rats are often found running around in the hallways and rat feces are commonly found on meal trays. *Id*. However, Troy's claim against Aramark Manager Mooney is unrelated to the claims against the defendants in this case.

Troy may not sue different defendants based on unrelated events. "Unrelated claims against different defendants belong in different suits . . .." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); s*ee also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017). Claims are related either if the same defendant is involved in each claim or if the claims all stem from the same transaction or occurrence and there is a common question of law or fact. Fed. R. Civ. P. 18(a), 20(a)(2). When a *pro se* prisoner files a suit with unrelated claims, the court can properly limit the case by picking a claim (or related claims) because "[a] district judge [can] solve the problem by . . . dismissing the excess defendants under Fed.R.Civ.P. 21." *Wheeler v. Wexford Health Sources, Inc*., 689 F.3d 680, 683 (7th Cir. 2012). Because Troy's claim against Aramark Manager Mooney is unrelated to the claims he is proceeding on in this lawsuit, the court will dismiss Aramark Manager Mooney.

Troy also asserts that, on December 13, 2022, he met with Captain Lewis and Nurse Bridegroom to discuss his medical conditions, reports, and medications. ECF 28 at 30. He discussed his concerns about his joint and chest pain, which he asserts stem from his hospitalization. *Id*. at 31. Troy states Nurse Bridegroom offered him one option for pain medication, which he was given for seven days. *Id*. Nurse Bridegroom later

told him she would not renew his prescription because he continued to write her medical staff "love notes." *Id*. Thus, Troy has plausibly alleged an Eighth Amendment claim against Nurse Bridegroom for being deliberately indifferent to his pain by denying him pain medication in December 2022, for reasons other than her medical judgment.

In March 2023, Troy asserts that he met with Nurse Bridegroom, Unit Team Manager Cornett, and Captain Lewis because he had difficulty standing in the shower. ECF 28 at 27. Because he could not stand for any length of time, a shower chair had been ordered for him to use for a six-month period. *Id*. However, after his medical records were reviewed at the meeting, Nurse Bridegroom cancelled the order for the shower chair. *Id*. at 27-28. Troy asserts Nurse Bridegroom's decision to cancel the shower chair order violated IDOC policy. *Id*. at 28. However, Troy may not proceed here because, as previously mentioned, a violation of IDOC policy alone cannot form the basis for a constitutional claim. *Sobitan*, 589 F.3d at 389; *Scott*, 346 F.3d at 760. Nor can Troy proceed on a claim under the Eighth Amendment, because he has not alleged facts from which it can be plausibly inferred that any of these defendants were deliberately indifferent to his medical needs. Therefore, he may not proceed here.

Furthermore, Troy has sued Warden John Galipeau because he oversees WCU's staff and its operations. ECF 28 at 3, 37. There is no general respondeat superior liability under 42 U.S.C. § 1983, and he cannot be held liable for damages simply because he oversees the operations at the prison or within the IDOC. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) and *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (both noting

14

that liability under 42 U.S.C. § 1983 is based on personal responsibility and that prison officials cannot be held liable for damages solely because they hold supervisory positions). However, Warden Galipeau may be held liable if he "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). Moreover, "[i]ndividual defendants . . . who are responsible for setting prison policy, can be held liable for a constitutional violation if they are aware of a systemic lapse in enforcement of a policy critical to ensuring inmate safety yet fail to enforce that policy." *Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018). Knowledge may reasonably be inferred when a condition is so pervasive that high-ranking officials were "bound to have noticed" it. *Smith v. Sangamon Cty. Sherriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013). Troy has not alleged facts from which it can plausibly be inferred that Warden Galipeau knew about, facilitated, approved, condoned, or turned a blind eye toward any alleged unconstitutional act he believes occurred at WCU. Therefore, he may not proceed against Warden Galipeau.

As a final matter, Troy alleges he filed a grievance about being denied medical treatment, a shower chair, showers, and recreation, but his grievance was denied by the prison's final reviewing authority. ECF 28 at 37-38. However, to the extent that Troy is suing because of how his grievance was handled, he has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, he may not proceed on this claim.

For these reasons, the court:

(1) **DISMISSES** Aramark Manager Mooney pursuant to Federal Rule of Civil Procedure 21;

(2) **GRANTS** Ramel Theodore Troy leave to proceed against Officer Baily and Officer Bell in their individual capacities for compensatory and punitive damages for refusing to provide Troy with breakfast meals from September 1, 2022 to September 23, 2022, in violation of the Eighth Amendment;

(3) **GRANTS** Ramel Theodore Troy leave to proceed against Officer Motsagen in his individual capacity for compensatory and punitive damages for refusing to provide Troy with lunch and dinner meals from September 1, 2022 to September 23, 2022, in violation of the Eighth Amendment;

(4) **GRANTS** Ramel Theodore Troy leave to proceed against Officer Brandon Williams in his individual capacity for compensatory and punitive damages for denying Troy access to water in his cell from September 1, 2022 to September 23, 2022, in violation of the Eighth Amendment;

(5) **GRANTS** Ramel Theodore Troy leave to proceed against Mental Health Counselor Michelle Boren in her individual capacity for compensatory and punitive damages for denying Troy mental health treatment in October 2022, in violation of the Eighth Amendment;

(6) **GRANTS** Ramel Theodore Troy leave to proceed against Officer Motsagen in his individual capacity for compensatory and punitive damages for using excessive force against Troy when he hog tied Troy with shackles and handcuffs, and placed him in a state van on November 13, 2022, in violation of the Eighth Amendment;

(7) **GRANTS** Ramel Theodore Troy leave to proceed against Officer Brandon Williams in his individual capacity for compensatory and punitive damages for using excessive force against Troy when he hog tied Troy with shackles and handcuffs, and placed him in a state van where he assaulted Troy on November 13, 2022, in violation of the Eighth Amendment;

(8) **GRANTS** Ramel Theodore Troy leave to proceed against Nurse Sandra Allen in her individual capacity for compensatory and punitive damages for being deliberately indifferent to his requests for medical treatment following the November 13, 2022, assault, in violation of the Eighth Amendment;

(9) **GRANTS** Ramel Theodore Troy leave to proceed against Captain Gary Lewis in his individual capacity for compensatory and punitive damages for housing Troy in an unsanitary cell contaminated with urine and feces from November 13, 2022 to September 2023, in violation of the Eighth Amendment;

(10) **GRANTS** Ramel Theodore Troy leave to proceed against Nurse Nicole Bridegroom in her individual capacity for compensatory and punitive damages for denying him pain medication in December 2022, in violation of the Eighth Amendment;

(11) **DISMISSES** all other claims;

(12) **DISMISSES** Warden John Galipeau, Unit Team Manger Tracy Cornett, Nurse Dorothy Livers, RPA Cathy Weber, Dr. Jackson, Sgt. Escobedo, Officer Pleasant, Dr. Niraj Bhalakia, Dr. Kamal Sadat, Nurse Thomas Swedenberg, Nurse Kari Rodeborst, and Franciscan Alliance;

(13) **DIRECTS** the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Baily, Officer Bell, Officer Motsagen, Officer Brandon Williams, and Captain Gary Lewis at the Indiana Department of Correction, with a copy of this order and the second amended complaint (ECF 28);

(14) **DIRECTS** the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Mental Health Counselor Michelle Boren at Centurion Health of Indiana, LLC, with a copy of this order and the second amended complaint (ECF 28);

(15) **ORDERS** the Indiana Department of Correction and Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(16) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Officer Baily, Officer Bell, Officer Motsagen, Officer Brandon Williams, Captain Gary Lewis, Mental Health Counselor Michelle Boren, Nurse Sandra Allen, and Nurse Nicole Bridegroom to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 29, 2025.

*/s/Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT